For a number of reasons, including that it's undisputed, the experts agree on that point. In the evidentiary hearing before the district court, Dr. Heppe, a Polish expert, agreed with Dr. Islam on three different occasions at 2152 in the Joint Appendix, 2155, and 2159 that the terms in-band and out-of-band have a general and had a general meaning and generally the invention, which is 2001, and that that understood meaning was that they're separate and distinct from one another. But separate and distinct, is that enough? Well, so there's more, certainly. That helps get us there. But the claim language itself provides considerable context. The in-band communication provides the additional context of being with the, between the exercise apparatus and the local server. It also must be... But you concede that both in-band and out-of-band could change over time, correct? That's right. So you're saying that what's in-band today could be totally different than what it is tomorrow. I understand that that might be useful for the innovators, but how does the public then judge its conduct based on those descriptions of in-band and out-of-band if they are necessarily moving targets? Because the in-band and out-of-band are used in the claims in the same way that you might use first and second. So if you go through the specification and substitute, every time you see in-band, substitute the word first, and every time you see out-of-band, substitute the word second, it reads exactly the same. We're just talking about two separate and distinct instances of communication, and that's the constant throughout the specification. That when we're talking about the system, we talk about out-of-band communication and in-band communication, they're separate and they have some crossover in which is which in any given example. But when you have a situation like that... Wait, wait, wait. So you're saying that I could have first and second and don't define what first is and don't define what second is, and sometimes they overlap? No, I'm not saying that. You said crossover. I'm referring to the places in the specification that Polar is trying to draw out as being inconsistent with the idea that first and second, or that in-band and out-of-band refer to separate and distinct instances of communication. That's the main point of the specification. The claims don't cover every single thing that's in the specification. The claims only cover systems that have both in-band and out-of-band communication going on at the same time. So if everything was in-band, the claims don't cover that. They don't purport to cover that. But you do admit that what's out-of-band today could be in-band tomorrow. I do as far as that goes, certainly, because the example and then the specification provides an illustration. It doesn't limit. It provides an example of a preferred embodiment. In the example, they illustrate the distinction of separateness using in-band and out-of-band and in-band communications being tied to a simple apparatus, a simple mode of communication where things such as interactions with sensors and actuators, very low bandwidth, very low bandwidth, required additional componentry in 2001. These days, a lot of that could happen over one band. It could all be Wi-Fi. But back then, you needed separate and distinct out-of-band hardware in order to make that happen. The claims cover a system that has those two separate and distinct instances of communication. The claim language says that out-of-band communication must be with the user and it must be related to the in-band communication or have a relationship to the in-band communication. In-band communication must be wireless, bidirectional, and between the exercise apparatus and the local server. We provide plenty of specificity in the claim language itself that helps us understand when we're talking about in-band and out-of-band. But the questions that you're asking plays really into the argument that the district court bought into, that the idea that the patent is speaking in terms of specific bands and that the claims are directed to specific bands. They're not directed to specific bands. They're directed to instances of communication that are referred to as an in-band communication, which is between the exercise apparatus and the local server, and everything else, which is out-of-band communication. So you have to have both of those. It looks as if what was bothering the district court was your statement in the specification that it moves from out-of-band to in-band as the technology advances. So that as the technology advances, what's out-of-band now might be so straightforward that it's in-band later. So what would follow from that would be that an invention made 20 years ago covers all of the advances that have since been made by others, presumably, not disclosed and described as filed. And it looks as if that seems to underlie what was bothering the district court. Well, so the district court's job really is to try to understand the claims, not to try to be confused by them. If you try to understand them, you realize in-band and out-of-band are referring to two separate and distinct instances of communication, a first communication and a second communication. But you said very clearly that the movement depends on the capabilities of the technology, as to whether it's in-band or out-of-band. Right. That's in the specification by way of illustration to distinguish, to make the distinction between in-band and out-of-band. And it said that over time, things that are in-band these days or out-of-band these days might become in-band by way of illustration. That doesn't mean that they will meet the claim limitations. Unless you have a claim, unless you have a device, a system that has two instances of communication, the characteristics don't matter of this in-band and out-of-band. In-band and out-of-band, like I said, is used just like first and second. So the characteristics of it don't matter. If in-band is FM 92.1 and out-of-band is everything else, that's fine. In-band can be any other specific band and everything else is everything else. Out-of-band is everything else. But if it doesn't matter, but those limitations are in the claims. If there were claims without those limitations to whether it's in-band or out-of-band, then we wouldn't be concerned about subsequent advances. But in-band and out-of-band are not, they're merely referring to first and second. They're not referring to a particular band. So if something migrates to a different type of band, that's not consistent with what the experts said. What the experts said, this first and second communication, I didn't see the expert testimony embrace that idea at all. I thought both experts said that in-band and out-of-band have meaning to one of skill in the art when there is a reference point to understand what you mean by in-band and out-of-band. And in fact, there were 10 extrinsic references that were cited, 10 pieces of prior art discussing in-band and out-of-band that were presented to the district court. And none of these said it's a first communication and a second communication. And if I'm wrong, show me in the appendix where any one of these references describes in-band and out-of-band as simply a first communication versus a second communication. I understood them all consistent with the expert testimony to be in-band and out-of-band with reference to something, with a starting point, a reference point, whether it be frequency or, I don't know, anything. You could have any criteria and then say everything, like you said, 92.7. Well, that's a frequency, right? So in-band is, you've defined in-band. So now we can define what's out-of-band, everything that's not that. Am I wrong? Am I missing something in the 10 pieces of evidence submitted or the two experts testifying? Did one of them say clearly and unequivocally that it just means first and second to one of skill in the art that you're arguing now? It would be inappropriate for either of those experts to do that because that's claim construction. That's internal assessment of the internal coherence and the context of the patent. No, no, time out. The Supreme Court said in Teva that experts can tell us what terms mean to one of skill in the art. And I thought both of these experts did testify to that point. And neither of them said that to one of skill in the art, this term means first and second communication. I don't see that in any testimony presented. I'm not arguing that that's what they mean to one of skill in the art. I'm arguing that's what their legal meaning is in the context of the claims. Oh, so you're saying, time out, so you're saying that this patent redefined the terms different from their meaning to a skilled artisan? I don't intend to say that, no. No, I'm saying that the testimony of the experts is consistent and wholly supports the reading of the claim. Neither of the experts testified that it means first or just first and second communication. Neither of them testified to that. Well, actually our expert did testify to that. He was asked about it. I can't take you to it in the appendix right now, but it is in there. I believe we cite to it in the briefs. I'm not certain of that, but that was part of his testimony at the evidentiary hearing. He did say that. He said you could call it first and second. You could call it, I think he even said you could call it Ralph. You both said with regard to a reference point, though. Well, that's true. You do, but when you're making the system, the claim system, you can pick your starting point. You do need to pick your starting point. These claims don't inform anyone as to the reason you're troubled with. It does. It has to be between the exercise apparatus and the local server. It needs to be wireless. It needs to be bi-directionable. It needs to be separate and distinct from everything else, which is the out-of-band communication. And have a relationship with everything else. And have a relationship, which means that it regards the same exercise session. That's consistent with the entire context of the specification. Every single example that's given in there, in-band and out-of-band, are in the entire specification. The relationship's a plain and ordinary meaning kind of term, and the word does not appear in there, but in-band and out-of-band undeniably have a relationship throughout the entirety of the specification. They're always referring to the same, their communications regarding the same exercise session. Okay. Let's hear from the other side, and we'll save you for rebuttal, Mr. Freeman. Thank you. Mr. Moran. Good morning, Your Honors. If I may, I'd like to briefly touch on three points this morning. They are the topic that was just discussed, in-band and out-of-band communications, the relationship between those two communications, and the issue of waiver that was not discussed. With respect to in-band and out-of-band communication, this case resolves on the fundamental principle that patents are looked at through the lens of one skilled enyar, and that's precisely what the district court did. That initial round of briefing and a hearing on claim construction, the Nautilus case came down. The district court asked for a hearing, an extra briefing on how that impacted the decision and the analysis. Before Nautilus, you didn't have any trouble proposing a claim construction for in-band and out-of-band, did you? Yes. The parties disputed what out-of-band was. But you still had a proposed construction. We had agreed initially on a definition of in-band. You can't talk when I'm talking, okay? You had a proposed construction that did not argue it was indefinite, right? Yes, Your Honor. And why wasn't that enough? Why couldn't even under your construction, why wouldn't that save this patent from a 112 attack? For two reasons, because the in-band and out-of-band communications that were agreed to initially, we did not agree on out-of-band, and that was a controversy. The in-band definition is plainly, flatly wrong. And if I may, I refer the court to page 17 of Appelli's brief, and there's an annotated figure, 14 from the patent. And just to put that into context, that is the controller inside an exercise device. And looking at that figure, the top geometric shape is identified as out-of-band communications, and below there was no dispute. Both experts testified, and it's explained in our brief with cites to the appendix, that that's out-of-band communication. And it goes to and from the exercise device. Below that, there's a transmitter and receiver that constitute in-band communication, and that's plainly set forth in the patent. So this figure shows in-band and out-of-band communications going to and from the exercise device. And consequently, the initial proposed construction, and the proposed construction is before the court from Appellant's, is wrong. You can't distinguish in-band and out-of-band because they both go to and from the exercise device on the plain disclosure of the patent. Well, how was your original construction of high bandwidth communication, how did that distinguish, in your mind, in-band from out-of-band? It did, and that was a proposal that the parties were discussing at the time and trying to find some common ground. As the parties' discussion progressed, it became plain that these two terms could not be resolved or differentiated. And consequently, as I just demonstrated, the original in-band construction was plainly wrong. Faced with that, the district court asked for the input from experts and found three fundamental facts as discussed briefly. The terms are generally known, there's no dispute about that. They're generally known to be relative terms, and importantly, they only have meaning in a given context with a reference. And the district court, as discussed earlier, went through the testimony, looked at her testimony about five extrinsic references. Why isn't the reference the machine itself? It's in-band if it's on the machine. Because both communications are involved with the machine, so it doesn't provide any kind of reference. There's no way of distinguishing whether, as the district court said here, this is at our brief at page 21, we come to the fundamental issue, which is that all of these things, that's the 10 references, require a reference. Without a reference, you cannot tell what is in or what is out. And that's the fundamental point here. What does one skill to the art bring to the table in order to try to read this patent? The expert testimony, as the court found, clear background technology, tools where it needed a reference. The district court looked for a reference, couldn't find one, and consequently came to the legal question, which is a de novo question, that the patent is invalid for indefiniteness. With respect to the issue of the relationship between the two claimed communications that was touched upon briefly in the opening argument, there's no question that, as mentioned a few moments ago, that the term relationships not in the patent specification, it only appears in the claims, was entered into the claims by amendment, so it was not part of the original patent. And at the time of the amendment, there was no explanation of what relationship between the communications were. But aren't there some things in the specification that define the difference between in-band and out-of-band, like the robustness or the cost? Aren't those kinds of things enough to give you a reference point? No, because the robustness of, for example, as a panelist argues, the robust, complex, whoever defines these terms, expensive hardware is out-of-band hardware. However, the patent also says that as things get more complicated and better processing becomes available, everything can be in-band. So the robustness expense complexity argument falls apart because what should have been out-of-band is called in the patent in-band, that is, everything becomes in-band. But the patent explained that. And wouldn't a person of skill in this field as the experts appreciate that as the technology advanced that some of the transmissions would move from out-of-band to in-band without anyone misunderstanding what was happening? No, because you don't know what an in-band or out-of-band is. And for example, one example is that the proposal that was discussed this morning briefly was... We don't know in advance. We don't know in advance. We don't know what we have. But the specification tells you that as the technology advances, so does the nature of the communication. As technology advances, Your Honor, you don't know if you have a system today and three years from now, the system is out there, which one of the communications in your apparatus is in-band or out-of-band? That's not their invention. Their invention is the sequence of steps whereby certain communications take place at certain stages in the relationship. And they explain what a person of ordinary skill would look for and would understand. And I didn't see that the experts said that they didn't understand what was meant. Yeah, well, the experts did, at least, a Palese expert testified at the hearing that, as I briefly mentioned, the terms in-band and out-of-band, while generally understood like left or right, tall or short, or hot or cold, have a general understanding, but do not only have meaning in a given context, with a reference. And the expert testified at the hearing that, after exhaustive review of the patent specifications, the patent prosecution, that could not find a reference to distinguish the terms in-band and out-of-band. And moreover, simply removing the terms in-band and out-of-band from the claim and replacing them with one and two changes the issue before the court. That's not what the claim language is. The claim language is in-band and out-of-band. But it's explained in the specification. You don't need a reference if the inventor has explained it. That's the problem. The inventor didn't explain it. The inventor used contradictory overlapping and circular discussions. Everything that could be in-band, everything out-of-band can someday be in-band. Or it doesn't even have to wait until someday. If you use the appropriate hardware, everything is in-band. And moreover, you can't use the definition of that you select in-band, everything else is out-of-band, because the claim, claim one, for example, also recites, as we discussed in our brief, a third communication. So the principle that if you pick in-band, everything else is out-of-band, addresses two communications, but the claims has a third. So that argument doesn't fit with the claim language, which has three communications, both claims one and five, as we discussed in our brief. Do the issues of infringement, if you get to infringement, depend on whether any particular communication is in-band or out-of-band, or is defined as in-band or out-of-band? I believe so, yes, Your Honor. The accused systems, the actual discovery and progression of the case hadn't advanced far along, but it's my understanding that it rests on certain communications being in-band, certain communications being out-of-band. And the question arises, and it's here today, what is an in-band communication, what is an out-of-band communication, and what is the relationship between these two? And as the testimony before the court below, and as discussed in the brief, the relationship can be the same thing. The patent says it can be the same thing. They don't have to have a temporal relationship. The patent specification, because it doesn't discuss any relationship, does not provide any definition with any reasonable certainty of what this claimed relationship is between the two communications, out-of-band and in-band communication. Were you able to find any authority from us that would indicate that whenever you have a claim limitation that could change over time, that by definition it's indefinite? I did not look at that, Your Honor, no. By inherency, though, if you have this pen, for instance, that because now it has a polymer in the plastic is not infringing, simply because time has passed. If I have my pen here today, it's infringing, and then next week it's not infringing if I have the same pen. Just because time has advanced is the essence of indefiniteness. As we discussed in the brief, the other example is if we're going to have changing over time, you don't even have to wait for changing over the time. You use the complexity or the expense type distinguishing factor that the appellant says. It depends upon the manufacturer. Some manufacturers get good prices so that theirs is all in-band because it's cheap. Other manufacturer making the same device doesn't get good prices, and consequently they have an infringing device. That's not a guiding principle. That's not reasonable certainty. One other point with respect to the issue of waiver, appellant's case before the court today rests on having separate instances of communication. In-band and out-of-band just basically can be written out of the claim, just have separate instances of communication. That's not the construction they presented below. It's not the one that's in their reply brief. The reply brief specifically says that in-band communication is communication to and from the exercise device, and all other communication is out-of-band. Their argument, as stated for example in the reply brief, I'll give you an example. Page 16 of their reply brief, and this just illustrates that the fact is that their case before the court today rests on a new construction. They state that they have these different hardware components, illustrates the correctness of its construction, its being appellant, that these terms are used in the claims to note separate and discrete instances of communication. Well, that's a different construction. It's not one the district court below addressed, and moreover, it illustrates the indefiniteness of the claims in and by itself, because the patent does not support separate and distinct hardware limitation, as we pointed out in the claim and we discussed briefly this morning with respect to figure 14, which shows out-of-band communication going into the controller, and in-band communication going into the controller, the same hardware processing both communications. Consequently, the patent does not support the different hardware argument of appellant. Is it fair to say the heart of your argument is that there are just no distinguishing criteria articulated in the spec, and certainly not in the claim, for what ought to distinguish in-band from out-of-band. It's like saying I'm going to form a group, and then telling you you can or can't be in it, but not telling you what the criteria for the group is, not giving you any idea of what I'm looking for to distinguish between this group and that group. Yes, and that relates back to the fundamental principle or idea that the district court found that you need some sort of reference. What's the guiding reference for being in one group or another? I see my time is just about up. I'll be glad to take any further questions. Let me see. Any more questions? You're satisfied with your answer? Any more questions? Okay. Thank you, Mr. Moran. I think for any patent ever issued, if you want to make a concerted effort to try to be confused by it, you can do that, and you can find ways to do that in the specification. What defines the invention are the claims, and the claims define in-band and what's an in-band communication and what's an out-of-band communication. The claims do not suggest, and nothing in the specification suggests, that when we talk about in-band, we have in mind something specific. In fact, in-band and out-of-band used in the varying ways that we're talking about, that denotes a breadth of meaning, and the case law is clear on that. Well, the problem is that when you say there's nothing, we're not contemplating anything specific. We've got a public notice function here, and that's what this indefiniteness issue is. The court could have construed in-band and out-of-band exactly as you want, which is whatever you want it to be, essentially, but that doesn't satisfy the question of whether or not you have definitely described what it is that you've claimed. I believe it does, because if you're practicing the invention, if you have a system that has two separate and distinct instances of communication, one that's in-band, you do need to choose. You need to pick what it is, what's specific, and then everything else is out-of-band. But there's additional context provided by the claims as to what's in-band and out-of-band. We've gone over them a hundred times already. Between the exercise device and the local computer, wireless, bidirectional, that's in-band. Out-of-band is with the user. So let me give you a hypothetical. So you've got one of these little exercise devices that has the time on it, and then can tell you how many steps you did. And you're saying that if you claim that as in-band and everything else is out-of-band, then you get an Apple watch that has a thousand things in-band, but still can communicate with the phone, that therefore you would be infringing the in-band, out-of-band patent on the little exercise device. Is that right? No, I don't think so. So the example that comes to my mind is a bicycle and a bicycle and your pedals. It's got a sensor that tells how many times the wheel goes around for the speed. And you've got your local computer, which is the thing you mount on your handlebars that tells you how fast you're going. So you've got signals going back and forth. The local computer is saying, send me information. The sensors are saying, here's some information. It's wireless, it's bidirectional, and it's between the exercise apparatus and the local server. And then separately, your out-of-band communication, when you get done with all that, you send it up to the internet, you send it to a remote server. And then separately, later, or in real time, you can sit down and have an out-of-band communication to review your data regarding that exercise session. That's a separate communication, it's out-of-band, it involves the user. That's how we know they're distinct. Where does it say that in the specification? It provides context for the bicycle use at figure 13 in the bottom quadrant there. It shows bicycles in the mobile, they call it mobile local server in that context. That's a bike computer. If you look at figure 13, it looks like this. In the specification, they talk about using the system in connection with bicycles at A63 in the joint appendix that's column 5, line 37-53, also at page 69, that's column 17, lines 19-46. And really quickly, before I run out of time, I would like to say that in the joint appendix at 21-26, Mr. Moran did ask Dr. Islam about the question about first and second and A and B. I know, I just went back and read it when he was talking. And what Dr. Islam said is you can replace it with the word George. That's right. You can replace in-band with the word George. And I think everyone was a little bit perplexed. And he says, because it doesn't mean anything. You can use any random word you want. The word George could be inserted in. But you didn't choose to use the word George, and nor would one of skill in the art have any understanding of any meaning of the word George in the abstract, nor did you use it in the specification. You said in-band communication, and that has a meaning to people of skill in the art, only if there is a reference point. That's what everyone said. That's a step too far. That's not what the claims require. The claims require a general. But that's what their expert said. There's nothing that backs that up. That's what their expert said. There were 10 pieces of extrinsic evidence that were introduced. They're cited in the red brief. And the district court made fact findings about what one of skill in the art would understand these terms to mean outside the context of the patent. We have to review all that for deference. And that's what you're up against here. You want to make this de novo and replace the word in-band and out-of-band with your expert saying replace them with the word, what, George and Charlie? He didn't even give us an alternative name for out-of-band. I'll just come up with Charlie. Why not? It seems consistent with his testimony. Clear error applies to that last fact finding because in none of those 10 references does it say what he says they say. It uses in-band with a specific reference and out-of-band to mean everything else. That's consistent. That's fine. But you don't have the reference. We don't need to supply the reference in order for a person of ordinary skill in the art. But that's his own unsupported conclusion. There's nothing that he points to that says that. He points to things that look exactly like the patent that do use in-band and out-of-band, in-band specifically, out-of-band to mean everything else. But he doesn't say we can't, it's impossible to have a generalized discussion of in-band and out-of-band. That's nonsensical. Of course it's possible to have a generalized discussion of things that are in-band and out-of-band without first saying what's in-band and out-of-band, what's in-band specifically. I am out of time. Any more questions for Mr. Freeman? Thank you. Thank you both. The case is taken under submission.